**COURT OF CHANCERY
OF THE
STATE OF DELAWARE**

SAM GLASSCOCK III
VICE CHANCELLOR

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DELAWARE 19947

Date Submitted: April 26, 2021
Date Decided: July 12, 2021

Brian E. Farnan, Esq.
Michael J. Farnan, Esq.
Rosemary J. Piergiovanni, Esq.
Farnan LLP
919 North Market Street, 12ᵗʰ Fl.
Wilmington, DE 19801

Kevin G. Abrams, Esq.
J. Peter Shindel, Jr., Esq.
Matthew L. Miller, Esq.
Abrams & Bayliss LLP
20 Montchanin Road, Suite 200
Wilmington, Delaware 19807

Kevin M. Gallagher, Esq.
Robert L. Burns, Esq.
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE 19801

Anthony A. Rickey, Esq.
Margrave Law LLC
3411 Silverside Road
Baynard Building, Suite 104
Wilmington, DE 19810

Jeremy D. Eicher, Esq.
Eicher Law LLC
1007 N. Orange Street, 4th Floor
Wilmington, DE 19801

Re:    *Shiva Stein v. Lloyd C. Blankfein, et al.*, C.A. No. 2017-0354-SG

Dear Counsel:

I write briefly to resolve the Plaintiff's and the settlement objector's motions for fees. This matter involved, *inter alia*, a challenge to the compensation paid by the Goldman Sachs Group, Inc. ("Goldman") to its directors. The parties had fully briefed a motion to dismiss when they reached a settlement (the "2018 Settlement").

I held a settlement hearing on September 21, 2018,[1] and, by order of October 23, I rejected the 2018 Settlement.[2] To grossly oversimplify, I determined that the settlement, which required *the company*, Goldman, to commit to corporate hygiene measures in return for the release of breach-of-duty claims against the corporate fiduciaries *themselves*, was unfair to the stockholder class. Accordingly, I declined to approve the 2018 Settlement and scheduled oral argument on the fully briefed Motion to Dismiss.[3] Following argument, I denied the motion in a May 31, 2019 memorandum opinion with respect to the director compensation claim.[4] The remainder of the claims were dismissed.

Sean Griffith (the "Objector"), a Goldman stockholder, had appeared and objected to the 2018 Settlement, including by participating in pre-hearing briefing and oral argument. I found parts of the objection helpful in reaching a conclusion and awarded the objector $100,000 in legal fees.[5] Griffith thought this amount deficient, so much so that he sought an immediate appeal.[6] I found my award to be a collateral final order, permitting appeal,[7] but the Supreme Court disagreed, finding the matter interlocutory.[8] In any event, I considered the $100,000 award to be an

---

[1] Judicial Action Form for Settlement Hr'g held 09.21.18, Dkt. No. 70.
[2] Letter Op. and Order, Dkt. No. 72.
[3] Letter to Counsel confirming oral arg. on pending Mot. to Dismiss, Dkt. No 74.
[4] *Stein v. Blankfein*, 2019 WL 2323790 (Del. Ch. May 31, 2019).
[5] Letter Order, Dkt. No. 96.
[6] Objector's Appl. for Certification of Interlocutory Appeal, Dkt. No 97.
[7] Letter Op. and Order, Dkt. No. 103.
[8] *Griffith v. Stein on behalf of Goldman Sachs Grp., Inc.*, 214 A.3d 943 (Del. 2019) (TABLE).

award in full compensation of the amount reasonable in equity to compensate Griffith and his counsel for the corporate benefit they had created by their advocacy.

In March 2020, the parties again settled, this time including a reduction in compensation of Goldman directors going forward with a then-present value in the range of $4.6 million,[9] accompanied by therapeutic benefits.[10] The latter include Goldman's agreement to continue its practice of review of director compensation and related disclosures by proxy, to be followed by a stockholder vote.[11] Again, a hearing was held, and again Griffith appeared and objected.[12] This time, I rejected the objection and approved the settlement.[13] At the settlement hearing, the Plaintiffs sought a fee award of $1,500,000, including $925,000 for the salary reduction component and the balance for the hygienic improvements of the corporate

---

[9] *See* Tr. of 8-18-2020 Settlement Hr'g, at 44, 47–48, 57, 62, 65, Dkt. No. 137 [hereinafter "Settlement Hr'g Tr."]. In briefing on fees, the Objector has argued that various occurrences since the hearing—including an expansion of the board—have reduced the actual value of the reduction, while the Plaintiff argues—oddly, in my view—that there is effectively no time value of money, so that a salary reduction that will occur years in the future has the same value as money in hand. Settlement Hr'g Tr. 47–48. For purposes of this Letter Order, I give the salary reduction the present value I suggested was appropriate as of the time of the hearing—$4.6 million. Settlement Hr'g Tr. 44. I note that the Defendant agreed with this as the then-value of the salary reduction, Settlement Hr'g Tr. 57, and that the Plaintiff's suggested discount rate—0 to 2 percent—was not reasonable. Settlement Hr'g Tr. 48–49. In other words, neither party has suggested a legitimate alternative present value.

[10] Stipulation and Agreement of Compromise, Settlement, and Release, Dkt. No 118 [hereinafter "Settlement Stip."].

[11] Settlement Stip. 23.

[12] Sean J. Griffith's Objection to Proposed Settlement and Appl. for an Award of Att'ys' Fees and Expenses, Dkt. No 129; Judicial Action Form, Dkt. No 131.

[13] Settlement Hr'g Tr. 41–45.

3

function.[14]  After the settlement, the Objector moved for a fee award as well, for corporate benefits rendered.[15]  The parties opposed this,[16] and the matter has been briefed.[17]  Both the Plaintiff's and the Objector's fees are resolved herein.

In addressing the appropriate Plaintiff's fee, I have considered the factors supplied by our Supreme Court in *Sugarland Industries, Inc. v. Thomas*.[18]  The instant case awards fees pursuant to the corporate benefit doctrine.  The most significant of the *Sugarland* factors is the size of the common fund achieved by the Plaintiff.[19]  For reasons explained above, that fund, at present value as of the time of settlement, was around $4.6 million.  Because the Plaintiff had earlier agreed to an improvident settlement, the 2018 Settlement, and because that proposed settlement resulted in a payment of $100,000 to the Objector, I find it appropriate to deduct this amount from the value of the common fund.  I address the appropriate fee, then, under *Sugarland*.

---

[14] Settlement Hr'g Tr. 56.

[15] Objector's Appl. for an Award of Att'ys' Fees and Expenses, Dkt. No. 138.

[16] Letter on behalf of The Director-Defs. in Opp'n to Objector's Appl. for an Award of Att'ys' Fees and Expenses, Dkt. No. 142; Letter regarding Pl.'s Opp'n to Objector's Appl. for an Award of Att'ys' Fees and Expenses, Dkt. No 143.

[17] Included in this briefing were surreplies by the Objector and the Plaintiff addressing the expansion of the Goldman board and its impact on the value of the settlement.  Despite the arguments of the Objector, I do not find that the expansion of the Goldman board impacts the value of the settlement achieved.

[18] *Sugarland Industries, Inc. v. Thomas*, 420 A.2d 142 (Del. 1980).

[19] The *Sugarland* factors include the result achieved (here, the fund and the therapeutic benefits), the time and effort counsel have expended in the matter, relative complexity of the action, contingency of the fee, and the standing and ability of counsel.  *E.g.*, *Americas Mining Corp. v. Theriault*, 51 A. 3d 1213, 1254 (Del. 2012).

The issue to be litigated following the partially successful Motion to Dismiss was straightforward: whether in setting their own compensation, and in light of the existing stock incentive plan, the directors of Goldman breached their duties of loyalty. This did not present novel issues or unusual complexity. The litigation was at an early stage, just *post* the initial motion to dismiss. I do not find the time expended to be particularly relevant here, given the prior improvident settlement agreement and the dismissed claims. All counsel are respected practitioners. I am left, then, with a common fund in the amount of $4.5 million, together with the fact that the fee was purely contingent on success. What is an appropriate fee for this result? I must determine a fee that encourages wholesome contingent litigation.[20] I find in this context, given the history of the litigation, the partially granted motion to dismiss, the abortive 2018 Settlement, and the substantial fund created, that a fee award of 12.5% is appropriate.

The Plaintiff also seeks a fee for a therapeutic benefit—obtaining a commitment from Goldman to continue corporate practices that it was using but was not bound to continue. These included implementation and disclosure of the annual review of non-employee director compensation by Goldman's Governance Committee, annual engagement by that Committee of an independent compensation consultant, annual recommendation on director compensation to the Goldman board,

---

[20] *Frechter v. Cryo-Cell Int'l, Inc.*, 2016 WL 5864583, at *1 (Del. Ch. Oct. 7, 2016).

5

and annual proxy disclosure of its non-employee director compensation.[21]   In addition, when asking the stockholders to approve any stock incentive plan, Goldman agrees to identify each class of persons eligible to participate, together with the number of eligible participants therein.[22]   These commitments run through 2024.[23]

These therapeutic benefits, I confess, would be more impressive if they had not been agreed to by Goldman and implemented before the current settlement.  A four-year commitment to continue these practices is not an overwhelming benefit.  I think a fair fee award for these benefits, considering all the *Sugarland* factors, is $50,000.  Adding the foregoing figure to the common-fund award of 12.5% of $4.5 million leads to a fee award, all in, of $612,500.  I award that amount to the Plaintiff.

The Objector also seeks fees.  He argues that he has worked a corporate benefit here, by obtaining an improved notice for the settlement hearing to stockholders, and by providing an "adversary" to improve the settlement process.[24] I note that the presentation, in briefing and orally, of the Objector's counsel was thoughtful, scholarly, and cogent.  A failed objection to a settlement I found to be fair does not amount to a corporate benefit for which I can award a fee, however.

---

[21] Settlement Stip. 23–24.
[22] Settlement Stip. 24.
[23] Settlement Stip. 23–24.
[24] Objector Sean J. Griffith's Opening Letter Mem. in Supp. of Objector's Appl. for an Award of Att'ys' Fees and Expenses 6–9, Dkt. No 141.

The Objector's real argument is that, largely as a result of his initial objection, the common fund was created, a benefit for which he was not adequately compensated in the initial fee award.[25] I reject this contention. I have already found that the Objector's participation was helpful, but not crucial, to my rejection of the 2018 settlement.[26] More to the point, I intended the initial award of fees in the amount of $100,000 to be in full compensation for the benefit created. I continue to find that amount appropriate. I decline, therefore, to increase it here. I understand that the Objector forcefully disagrees with this decision and considers it inimical to his business model as an itinerant intervenor providing an independent voice in potential class settlements. This matter is now concluded, and he is free to seek redress on appeal.

1) The Plaintiff is awarded, for fees and expenses, $612,500.

2) The Objector is awarded no additional fee.

IT IS SO ORDERED.

Sincerely,

*/s/ Sam Glasscock III*

Sam Glasscock III

cc:     All counsel of record (by *File & ServeXpress*)

---

[25] *See id.*

[26] Letter Order, Dkt. No. 96.

7